UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RGB, LLC,   Case No. 18-11140-t11

Debtor.

**OPINION**

Before the Court is the U.S. Trustee's motion to convert or dismiss this case. The Court held a final hearing on the motion on December 20, 2018. For the reasons set forth below, the Court finds and concludes that a chapter 11 trustee should be appointed.

I. FACTS

The Court finds:

Debtor filed this chapter 11 case on May 4, 2018, and is a debtor-in-possession.

Debtor is located in Carlsbad, New Mexico. Debtor's business is repairing trucks, primarily trucks used in the oil and gas industry operating in the Permian Basin. Carlsbad is in or on the edge of the basin. After suffering an economic downturn when the price of oil fell in 2014, Carlsbad and the oil and gas industry in general have enjoyed several boom years. Debtor's business suffered during the oil and gas recession.

Debtor is owned by Robert Betancourt. He and his son[1] manage the business and have done so for many years. Mr. Betancourt is an honest man and an able truck mechanic. Mr. Betancourt is hoping to sell the business, pay all creditors, and keep the remaining equity to finance his retirement.

---

[1] The son's name also is Robert Betancourt. References to Mr. Betancourt in this opinion are to the father, not the son.

Debtor's main lender is First American Bank, which has mortgages on or security interests in substantially all of Debtor's real and personal property, securing a debt of about $800,000-$1,000,000. Pre-petition, Debtor defaulted on its obligations to First American. On January 12, 2018, First American filed a foreclosure action against Debtor in state court. The foreclosure action prompted the bankruptcy filing.

Debtor also is a judgment debtor on a $2,826,334 default judgment. Frontier Tank Lines, Inc. is the judgment creditor. Debtor disputes the validity of the judgment; the dispute has not been resolved.

Debtor's bankruptcy schedules list assets with a total value of $3,801,125, priority tax claims of $43,881.35, and general unsecured claims of $184,857.

Debtor filed an application to employ Karen Ballew as its accountant on June 29, 2018. Debtor later withdrew the application, after it became clear that Ms. Ballew was not disinterested.[2]

On July 24, 2018, the United States Trustee filed a motion to convert or dismiss the case. Frontier Tank Lines joined in the motion, as did First American.

On August 3, 2018, Debtor filed an application to employ a broker to sell its real property. No listing agreement was attached to the application or the broker's disclosure statement. It later came to light that the listing agreement referred to only one parcel of property, even though the intent of the parties was to list all of Debtor's property for sale.[3] The Court ordered Debtor to amend the listing agreement to include all property the Debtor intended to sell. The deadline to

---

[2] Ms. Ballew is Mr. Betancourt's girlfriend. She also is the sole owner of B&B Heavy Duty Towing LLC, which operates out of and leases space from the Debtor. There appears to be a substantial amount of business dealing between the Debtors and B&B. In addition, pre-petition the Debtor transferred assets certain asset to Ms. Ballew in payment for her accounting services. The transfer was not in the ordinary course of business.

[3] It also came to light later in the case that one of the parcels of real property used by the Debtor in its business operations is owned by Mr. Betancourt, not the Debtor.

amend the agreement was October 14, 2018. Debtor did not meet the deadline. Instead, Debtor filed the amended listing agreement on December 5, 2018.[4] To date, the broker's employment has not been approved, nor has any property been placed under contract or sold.

On August 1, 2018, Debtor filed an application to employ Harvey & Simons CPAs as its accountant. The Court approved the application on September 14, 2018. Harvey & Simons worked for Debtor for a short period of time, then resigned. It appears there was disagreement and acrimony between the parties. On January 7, 2019, Debtor filed a motion to employ Jennifer Beeman, a certified independent accountant, as Debtor's accountant. One consequence of Debtor's problems retaining an accountant is that it has been difficult to get accounting and financial information from the Debtor that is timely and reliable.

Since the petition date, Debtor's monthly operating reports have been filed as follows:

| Month of operations | Filing Date |
| --- | --- |
| May | 6/28/18, amended 9/26/18 |
| June | 7/23/18 |
| July | 9/26/18 |
| August | 9/26/18 |
| September | Not filed |
| October | Not filed |
| November | January 7, 2019 |
| December | Not yet due |

Only two of the operating reports used the form required by the United States Trustee's office for New Mexico. Further, the testimony at various hearings indicates that Debtor does not believe all of its operating reports are accurate.

The monthly operating reports show the following post-petition results:

| Month of operations | Profit/loss |
| --- | --- |
| May | $6,469.62 |

---

[4] Despite the two-month interval between the Court's order and the submission of the amended listing agreement, the only change to the agreement was a hand-written addition, not initialed by anyone, to the original listing agreement.

-3-

Case 18-11140-t11    Doc 139    Filed 01/11/19    Entered 01/11/19 11:55:28 Page 3 of 11

| June | ($75.15) |
| July | $11,158 |
| August | ($6,908) |
| September | ($22,219) |
| October | ($28,776) |
| November | ($18,638) |
| December | |
| Total | ($58,988) |

However, attached to the September 2018 operating report, which has not been filed, is a statement of income and expense prepared by Harvey & Simons. It shows an operating loss of $55,753.16 from May-September, 2018. If that figure is added to the monthly losses in October and November 2018, the net loss increases to $103,167.16.

On October 3, 2018, the Court entered an order authorizing use of cash collateral until December 31, 2018. The order required Debtor to file monthly operating reports using the form required by the United States Trustee's Office in Albuquerque, and to use the accounting methodology required by the United States Trustee's office in New Mexico. The order also required amendments to previous operating reports for any material corrections by November 2, 2018.

On October 26, 2018, Debtor filed an errata notice relating to its May, June, July, and August operating reports. The errata notice purported to submit amended financial statements for those months, but the statements were not attached.

On December 19, 2018, the Court held a final hearing on the motion to convert or dismiss. The next day the Court entered an interim order that required, inter alia, Debtor to file a proposed budget for 2019 operations by January 3, 2019. Debtor complied with the deadline, but unfortunately the budget was for another bankruptcy case. To date, no budget has been submitted for Debtor's proposed 2019 operations. As a result, Debtor has no authority to use First American Bank's cash collateral.

The Debtor owes about $54,500 post-petition taxes. Debtor's November 2018 operating report, Attachment 6, states that the Debtor has not paid *any* post-petition federal payroll taxes ($52,105.83) and did not pay November's state gross receipts tax ($2,462.88). Mr. Betancourt testified that he did not pay the taxes because he lacked the funds to do so.

As of January 8, 2019, no plan has been filed in this case.

## II. DISCUSSION

A. Conversion or Dismissal under § 1112(b).

    1. The General Rule. 11 U.S.C. § 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

*See also In re Skeen, Goldman, LLP*, 2007 WL 4556683 at *3 (Bankr. D. Md.) (absent special circumstances, if a creditor establishes cause, the court must dismiss or convert the case); *In re 3 Ram, Inc.*, 343 B.R. 113, 117 (E.D. Pa. 2006) (to the same effect).

    2. Cause. Section 1112(b)(4) provides:

> For purposes of this subsection, the term "cause" includes--
>     (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>     (B) gross mismanagement of the estate;
>     (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>     (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>     (E) failure to comply with an order of the court;
>     (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>     (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
(K) failure to pay any fees or charges required under chapter 123 of title 28;
(L) revocation of an order of confirmation under section 1144;
(M) inability to effectuate substantial consummation of a confirmed plan;
(N) material default by the debtor with respect to a confirmed plan;
(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

  3. <u>The "Unusual Circumstances" Exception</u>. If cause is found under § 1112(b)(4), the Court still may not convert or dismiss the case if the following is proven:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>  (i) for which there exists a reasonable justification for the act or omission; and
>  (ii) that will be cured within a reasonable period of time fixed by the court.

§ 1112(b)(2). Once a movant establishes cause, the burden shifts to the respondent to show unusual circumstances establishing that dismissal or conversion would not be in the best interests of creditors and the estate. *See* Collier on Bankruptcy ¶ 1112.05[2] (16th ed.) (citing *In re Hoyle*, 2013 WL 210254, at *13 (Bankr. D. Idaho)). Finding such "unusual circumstances" is within the discretion of the Court. *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 147 (Bankr. D.N.M. 2008) (§ 1112(b) restricts the court's discretion, but it still has some degree of discretion to deny a motion to convert or dismiss); *see also In re McKay,* 2013 WL 66263, at *3 (Bankr. D. Id.) (court retains

some discretion, but is required to make findings of fact establishing unusual circumstances). "Although a finding of unusual circumstances is within the court's discretion, the word "unusual" contemplates facts that are not common to chapter 11 cases generally." Collier on Bankruptcy ¶ 1112.05[2]. *See also In re Melendez Concrete, Inc.,* 2009 WL 2997920, at *7 (Bankr. D.N.M.) ("unusual circumstances" means circumstances not common in most chapter 11 cases, when the purposes of the Bankruptcy Code would be better served by the case remaining in chapter 11).

For examples of unusual circumstances, *see, e.g.*, *In re Melendez Concrete, Inc.,* 2009 WL 2997920, at *7 (value of debtor's assets 300% greater than secured debt); *In re Orbit Petroleum,* 395 B.R. at 148–49 (plan proposes to pay all creditors in full on the effective date); and *In re Pittsfield Weaving Co.*, 393 B.R. 271 (Bankr. D.N.H. 2008) (debtor's post-petition debt resulted from unexpected critical events while debtor's creditors had assumed the risk of continuing losses by continuing to deal with the debtor).

B.  There is Cause to Dismiss or Convert.

The Court finds there is "cause" under § 1112 to convert or dismiss the case.

1. Continuing Loss or Diminution. The Court finds that there is cause under § 1112(b)(4)(A), i.e. "substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation," The Debtor's operating reports show cumulative post-petition losses of $103,000. Debtor lost money every month except May and July. Further, as discussed below, Debtor has not demonstrated a reasonable likelihood of rehabilitation.

2. Failure to Comply with Court Orders. The Court finds that there is cause under § 1112(b)(4)(E), i.e., failure to comply with court orders. Debtor did not file its amended listing agreement on time, nor its 2019 budget for cash collateral purposes, nor the required amendments to prior operating reports.

3. <u>Reporting Requirements</u>. Cause exists under § 1112(b)(4)(F), i.e., "failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." Debtor has had continual trouble filing its operating reports. As shown above, the operating reports were sometimes filed timely, sometimes filed late, and sometimes not filed at all. The reports were not in the required form. The Debtor has questioned the accuracy of the reports.

4. <u>Unpaid post-petition taxes</u>. Cause exists under § 1112(b)(4)(I), i.e., "failure to timely pay taxes owed after the date of the order for relief . . . ." As shown by the latest operating report, through November 30, 2018, Debtor owed $54,568.71 in unpaid, post-petition federal and state taxes. Failure to pay was not a fluke; Debtor lacked the funds, each month post-petition, to make the required payments.

C. <u>Debtor Did Not Carry its Burden of Coming Within the (b)(2) Exception</u>.

1. <u>No Unusual Circumstances</u>. The Court cannot make a finding that there are unusual circumstances showing that converting or dismissing the case is not in the best interests of creditors and the estate. When the case was filed, the Debtor asserted that its assets were worth much more than its liabilities and that it would be able to operate profitably. Given the activity in New Mexico's "oil patch" at the time, both assertions seemed plausible. Eight months into the case, it now seems that Debtor's assets may not be worth much more than First American Bank's secured debt. Further, Debtor has not been able to turn a profit.

In addition, Debtor's business management and accounting skills are lacking. The Court believes that Mr. Betancourt is a good truck mechanic and an honest person, but he is not skilled in running a business. Mr. Betancourt is poor at bookkeeping, accounting, paying bills and taxes, keeping his personal interests separate from the Debtor's interests, and following the rules and

regulations necessary to operate a business in bankruptcy. Some well-meaning debtors are not cut out for operating in bankruptcy because they cannot follow the (admittedly somewhat complicated) bankruptcy rules. This Debtor is one of them. Combined with serious questions about its asset value and profitability, there is no evidence that unusual circumstances dictate keeping this debtor in chapter 11.

2. <u>No Reasonable Likelihood of Plan Confirmation</u>. Similarly, there is no evidence that the Debtor could confirm a plan in any reasonable time, if ever. Debtor has not filed a plan. Debtor's intent is to liquidate, pay all creditors, and keep the remaining sales proceeds for Mr. Betancourt's retirement. So far there is no evidence that such a plan is feasible. Rather, the evidence is that Debtor has been unable to generate any interest in buying its assets for anywhere near the asserted value,[5] and has been unable to operate at a profit while the sales effort is underway. Further, the post-petition losses indicate that any significant plan payments are not a realistic possibility.

3. <u>No Reasonable Justification for the Acts or Omissions Constituting "Cause."</u> Debtor's failure to pay post-petition taxes is due to post-petition operating losses. That is not necessarily Debtor's fault, but the inability to turn a profit cannot be considered a reasonable justification for unpaid post-petition taxes. The other instances of cause can be traced to Debtor's inability to follow the rules in a chapter 11 case—timely retaining competent professionals, timely filing operating reports that comply with applicable requirements, and timely complying with court orders. There is no reasonable justification for Debtor's failures in these respects.

4. <u>Cause Could not be Cured within a Reasonable Time</u>. There is no evidence that

---

[5] A buyer of Debtor's truck repair business would not pay millions of dollars unless it could satisfy itself that the business was profitable. That would require a careful due diligence review of Debtor's historical accounting records. From what the Court can tell, it is unlikely such records would be available.

Debtor could "catch up" on post-petition taxes any time soon. Debtor's difficulties with operating reports, following court orders, and complying with chapter 11 rules and requirements showed no signs of improving as the case went on. The Court has no basis upon which to find that, given more time, the Debtor would cure all its problems and start operating as a debtor in possession should.

D.  Conversion, Dismissal, or Appointment of a Chapter 11 Trustee.

Section 1112(b)(1) gives the Court the options of converting the case, dismissing the case, appointing an examiner, or appointing a chapter 11 trustee, whatever is in the best interests of the creditors and the estate. It is easy to rule out the appointment of an examiner; there does not appear to be a need for one. Among conversion, dismissal, or appointment of a chapter 11 trustee, it is a closer call. If Debtor's asserts are not worth substantially more than the bank debt, it likely makes no sense to do anything other than dismiss. On the other hand, if Debtor's assets have substantial value over and above the Bank debt, and if Debtor can operate at a profit, then appointment of a chapter 11 trustee might benefit creditors and the estate. The Court had hope for this Debtor because activity in the Permian Basin currently seems robust, and Debtor's business is tied directly to that activity. The Court would like to give a chapter 11 trustee the opportunity to review Debtor's operations and determine whether the business can operate at a profit during a sales period, and whether the assets could generate money for unsecured creditors. If the trustee answers either question in the negative, then the Court would entertain an immediate motion to convert the case to chapter 7 or dismiss it.

III.  CONCLUSION

There is no question that cause exists to convert or dismiss this chapter 11 case for a number of reasons, most importantly failure to pay post-petition taxes and continuing operating losses with

little prospect of rehabilitation. Similarly, there is no question that Debtor did not carry its burden of proving the "unusual circumstances" exception in § 1112(b)(2). Thus, the Court has no choice but to convert the case, dismiss the case, or appoint a chapter 11 trustee. The Court concludes that the appointment of a chapter 11 trustee is worth a try. It therefore will enter a separate order asking the U.S. Trustee's office to appoint a chapter 11 trustee.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 11, 2019

Copies to: counsel of record